## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROY F. FINCEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CV-0485-CVE-PJC** |
| | ) | |
| **TOWN OF BIG CABIN, OKLAHOMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 15). Plaintiff Roy F. Fincel, a former police officer for the Town of Big Cabin, Oklahoma (the Town) filed this lawsuit alleging (1) that his employment was terminated in violation of his right to procedural due process under the Fourteenth Amendment to the United States Constitution; (2) the Town impugned his reputation and violated his liberty interest under the Fourteenth Amendment; (3) the town terminated plaintiff's employment for "political" reasons unrelated to the stated reason for his termination; (4) the Town failed to pay all wages due to him at the time of his termination; and (5) the Town terminated him in retaliation for receiving workers' compensation benefits. Defendant seeks summary judgment on all of plaintiff's claims.

### I.

The Town is a municipality within the State of Oklahoma. Dkt. # 2-2, at 1, 4. The Town has a Town Board of Trustees (the Board) form of government. Fincel was hired as a full-time police officer by the Town in April 2004. Dkt. # 15-4, at 1. Fincel's immediate supervisor was the

chief of police, David DuBois.  Dkt. # 23-16, at 6.  At that time, the Town of Big Cabin and Public

Works Authority Employee Handbook (the Employee Handbook)[1] stated that:

> All employees are "at will" employees, subject to demotion or removal at any time,
> "for the good of the service."  Employment is subject to termination at any time
> when the needs of the employer may require.

Dkt. # 15-5, at 6.  The Town of Big Cabin Police Department Standard Operating Policies and

Procedures Manual (the Police Manual) prescribed rules, policies, and procedures for police officers

and the police department, including procedures for police officer discipline.  Dkt. # 23-4.

On April 5, 2007, Fincel was injured during the course of his employment when a police dog

he was handling jerked on its leash and pulled Fincel into a door of his police car.  Dkt. # 23-15, at

15.  Fincel injured his shoulder and applied for workers' compensation benefits.  He was on medical

leave from work.

Fincel received medical clearance to return to work in September 2008.  Dkt. # 23-18, at 5.

He he did not return to work for the Town or make a formal request to the Board to resume his

duties as a police officer.  Fincel testified that he contacted DuBois about returning to work but

DuBois said "the September schedule was already out, the earliest he could put me back on was in

October."  Dkt. # 23-18, at 7.  He testified that DuBois told him that the Board did not want to talk

to him.  Dkt. # 23-16, at 8.  Fincel began working for Skyhawk Wireless.  He testified that DuBois

approved his work for Skyhawk.  Dkt. # 23-18, at 9.  On October 30, 2008, the Board of Trustees

posted its agenda for a November 3, 2008 special meeting, and item number eight stated:

---

[1]     In May 2005, the Board of Trustees adopted a new "Employee Policies and Procedures
Manual."  Dkt. # 15-12, at 1.  On August 9, 2007, the Board of Trustees repealed the 2005
manual and reinstated the Employee Handbook. Id.

8.    VOTE TO GO INTO EXECUTIVE SESSION TO DISCUSS THE
EMPLOYMENT, SUSPENSION AND/OR TERMINATION OF POLICE
OFFICER ROY FINCEL, AS AUTHORIZED BY 25 O.S. § 307 B.1

EXECUTIVE SESSION TO DISCUSS THE EMPLOYMENT, SUSPENSION
AND/OR TERMINATION OF POLICE OFFICER ROY FINCEL, 25 O.S. § 307
B.1.

REGULAR SESSION - DISCUSS AND TAKE POSSIBLE ACTION REGARDING
THE EMPLOYMENT, SUSPENSION AND/OR TERMINATION OF POLICE
OFFICER ROY FINCEL.

Dkt. # 15-8, at 2.  On November 3, 2008, the Board went into executive session to discuss Fincel's

employment.  The Board completed its executive session and publicly voted to terminate Fincel "for

the good of the service."  Id. at 4. Fincel did not attend the November 3, 2008 special meeting or

request a post-termination hearing, although he was aware of the November 3, 2008 special meeting

and had seen the public agenda before the special meeting.  Dkt. # 15-3, at 15.

Fincel claims that the Board had been secretly planning to terminate his employment even

before he returned to work.  In April or May 2007, three new members were elected to the four-

member Board: Sam Yeoman, Dwight Helm, and Tom Polk.  Dkt. # 23-16, at 7.   Fincel believed

that the three new Board members intended to replace all the Town police officers because the three

members thought the police were corrupt. Dkt. # 23-17, at 9.  The three new Board members voted

in favor of Fincel's termination.  Dkt. # 15-8, at 4.  Fincel also contends that the Board wanted to

terminate him because of his receipt of workers' compensation.  DuBois has submitted a statement[2]

claiming that certain board members did not want Fincel to return to work because "he had been

paid enough on workers' compensation."  Dkt. # 23-13.  DuBois also states that the Board had an

---

[2]    The statement was not notarized by a notary public and it is not affidavit.  Dkt. # 23-13.

informal meeting before Fincel was cleared to return to work, and decided that Fincel would be fired for receiving excessive workers' compensation payments.  Id.

Fincel filed a petition in state court on July 2, 2009 alleging, in relevant part:

• He "was not given a pre-termination or post-termination hearing and was denied his liberty interests in connection with his termination.  Further the termination of Plaintiff was a political termination in violation of the United States Constitution."  Dkt. # 2-2, at 1.

• "[His] termination was, alternatively, because he had been exercising his rights under the Oklahoma Workers' Compensation laws."  Id. at 2.

• "As a result of termination, Plaintiff has lost income and suffered humiliation and distress. Further, Plaintiff has not received his pay to which he was entitled at the time of his termination."  Id.

Defendant removed the case to this Court.  Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

A.    Procedural Due Process Claim

A threshold question in an employment-related procedural due process claim is whether the plaintiff has a protected property interest in his continued employment.  Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).  Defendant argues that Fincel did not have a property interest in continued employment under state law, and plaintiff's procedural due process claim fails as a matter of law.  Fincel responds that  he has a property interest under various statutes and a "policy."

'A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or

5

liberty interest protected by the Due Process Clause; if a property or liberty interest is not implicated, he must settle for whatever procedures are provided by statute or regulation.' Determination of whether a plaintiff has a property interest is a question of state law.

Graham v. City of Oklahoma City, 859 F.2d 142, 145-46 (10th Cir. 1998) (per curiam) (quoting Sipes v. United States, 744 F.2d 1418, 1420 (10th Cir. 1984)).  A property right in employment exists if plaintiff had a legitimate expectation of continued employment.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  For example,  a statute or regulation that places substantive restrictions on the discretion to terminate an employee creates a property interest.  See Henneigh, 155 F.3d at 1254 (discussing substantive restrictions on the discretion to demote an employee).

Defendant claims that municipal employees, including police officers, are treated as at-will employees and they do not have a right to pre-termination or post-termination hearings to challenge terminations for the "good of the service."  Fincel contends that the following provide him with a protected property interest in his employment:

- OKLA. STAT. tit. 11, §§ 12-111 and 12-114.  Dkt. # 35, at 1-2;

- OKLA. STAT. tit. 11, § 50-123.  Dkt. # 23, at 17; and

- his claim that "[w]hen [he] was hired on (until the new board attempted to change it after [Fincel] went out on injury leave; a change that [Fincel] would have had to sign for, but did not), policemen were not at-will employees, but were entitled to due process."  Id. at 12.

OKLA. STAT. tit. 11, §§ 12-114, which applies to towns organized under a board of trustees form of government, provides:

Appointments and promotions in the service of a statutory town board of trustees government shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made solely for the good of the service.

6

> The board by ordinance may establish a merit system and provide for its organization and functioning, and provide for personnel administration and regulation of personnel matters. The board of trustees may remove for cause any appointive officer by a majority vote of all its members.

The language "for the good of the service" does not create a protected property interest in employment.  See Campbell v. Mercer, 926 F.2d 990, 993 (10th Cir. 1991) ("the . . . City Code provision permitting the mayor to discharge plaintiff 'for the good of the service' is not sufficient to create a property interest that is subject to federal constitutional guarantees"); Graham, 859 F.2d at 146; cf. Hall v. O'Keefe, 617 P.2d 196, 200 (Okla. 1980) (holding that OKLA. STAT. tit. 11, § 10-120, which provides that terminations may be made "solely for the good of the service" in a statutory council-manager city, does not create a property interest in continued employment within the due process clause of the Oklahoma Constitution).

Fincel contends that § 12-114 provides him a property interest because "appointive officers" may be removed for cause only.  Dkt. # 35, at 1.  He claims that a police officer is an "appointive officer" under § 12-111.  That section provides that "[t]he board of trustees may appoint a chief of police" and "[t]he chief of police may appoint police officers as he deems necessary, subject to the approval and confirmation of the board of trustees."  The United States District Court for the Western District of Oklahoma held that the chief of police was not an "appointive officer" under § 12-114 and, thus, was terminable "for the good of the service."  Lane v. Town of Dover, Okla., 761 F. Supp. 768 (W.D. Okla. 1991) (looking to OKLA. STAT. tit. 11, § 1-102(6) for definition of "officer or official").  This Court has previously determined that a town police chief could be terminated for the good of the service under § 12-114, and the Tenth Circuit agreed.  Parker v. Town

of Chelsea, 275 Fed. App'x 769, 771 (10th Cir. 2008) (unpublished)[3].  This conclusion is sound. The positions of town clerk and town treasurer are, by statute, designated as "officers of the town." OKLA. STAT. tit. 11, §§ 12-109 ("[t]he town clerk shall be an officer of the town"), 12-110 ("[t]he town treasurer shall be an officer of the town").  In contrast, the chief of police is not designated as an officer.  OKLA. STAT. tit. 11, § 12-111.  If the <u>chief</u> of police is not an appointive officer, it follows that individual police officers are not appointive officers.

Further, even if the chief of police were an "appointive officer," it does not follow that police officers would be.  A police officer is not an "appointive officer" merely because § 12-111 gives the police chief the power to "appoint" police "officers."[4]  The town board of trustees has the power to appoint town officers.  OKLA. STAT. tit. 11, § 12-106.  While the board of trustees may appoint a chief of police, it does not appoint individual policemen.  OKLA. STAT. tit. 11, § 12-111.  Fincel was not an appointive officer because he is not an officer of the Town, nor was he appointed by the Board.  Therefore, he could be terminated "for the good of the service" pursuant to OKLA. STAT. tit. 11, § 12-114.

Fincel also argues that OKLA. STAT. tit. 11, § 50-123 creates a protected property interest in his continued employment as a police officer.  The law states that no "member" of the Oklahoma Police Pension and Retirement System (the OPPRS) may be discharged except for cause.  A "member" is an "eligible officer of a participating municipality."  OKLA. STAT. tit. 11, § 50-101. Section 50-123 does not create property interests in employment for non-member police officers.

---

[3]      Unpublished decisions are not precedential, but may be cited for their persuasive value. <u>See</u> Fed. R. App. 32.1: 10th Cir. R. 32.1.

[4]      Fincel essentially argues that he is an appointive officer because his job title included the word "officer."

See In re City of Durant, 50 P.3d 218, 221 (Okla. 2002) ("[s]ection 50-123 is specifically directed at members of the police pension and retirement system, prohibiting their discharge 'except for cause' . . . whereas § 10-113 applies generally to municipal administration;" "[s]ection 50-123 . . . is clearly intended to protect policemen who are members of the state pension and retirement system") (emphasis in original);[5] see also Armstrong v. City of Arnett, 708 F. Supp. 320, 328 (W.D. Okla. 1989) ("[s]ince Plaintiff was not a[n OPPRS] participant, he may not rely on [§ 50-123] to create a property interest or implied contract in his continued employment").   Fincel has provided no evidence whatsoever that he is a member of OPPRS, and defendant has provided evidence that Big Cabin is not a participating municipality, Dkt. # 29, at 5.   Plaintiff's Further Authorities on Motion for Summary Judgment Issues (Dkt. # 35) responds to defendant's argument regarding § 50-153 by unsuccessfully attempting to distinguish City of Durant, see n.5, supra, and asserting that Fincel has a property interest in continued employment "regardless of the applicability of [§ 50-123]." Dkt. # 35, at 1-2.  Because Fincel has failed to provide any evidence that he is a member under OKLA. STAT. tit. 11, § 50-123, he cannot claim it as the basis for a protected property interest.

Finally, Fincel asserts that some policy was in place that "policemen were not at-will employees, but were entitled to due process." Dkt. # 23, at 12.  He also asserts, without reference to any factual materials whatsoever, that:

> [t]he facts show that Plaintiff was protected by due process in his job, at least until the new Board came in.  At that time, Plaintiff was out on his job-related injury.

---

[5]     City of Durant dealt with the potential conflict between § 50-123 and § 10-113, which relates to the city manager form of government, rather than the town council form of government at issue here.  This distinction does not affect City of Durant's relevance to this case.  Cf. Dkt. # 35, at 1.  City of Durant is relevant because it discusses when § 50-123 applies to a particular police officer, not because of its discussion of § 10-113.  Further, the difference in forms of government at issue is immaterial.

> Because Plaintiff had not worked under the purported new rule of 'at will' and had not signed for the new policy, as Defendant's procedure was, then Plaintiff did not accept the at-will and continued to be protected by his original agreement.

Dkt. # 23, at 17 (emphasis in original).  At various times in his deposition and his response to plaintiff's interrogatories, Fincel contended that this alleged policy of "due process" was written in either the Employee Handbook or the Police Manual.[6]  See Dkt. # 23-3, at 5 ("[a]s to the failure to give a pre-termination and post-termination hearing, there was a policy book in place that called for those remedies.  During the time I was off, this was changed, but then it was changed back to what it had been prior to the termination.  This is the town handbook, rather than the police handbook"); Dkt. # 23-16, at 4 (stating that the relevant policy was in both the Police Manual and the Employee Handbook); Dkt. # 23-17, at 7 (stating that he saw the termination procedure in "an Oklahoma state statute and a federal statute").

The Police Manual does not create a right to continued employment.  The Manual states that the chief of police may recommend to the Board that an officer be dismissed for the good of the service, but does not limit the Board's power to terminate an officer in any way.  Dkt. # 23-5, at 4. The Employee Handbook lists several procedures for termination of employees.  These procedures are, however, subject to the following limitations:

- "These outlined steps are not required where the supervisor believes that the problem is not capable of being resolved based upon the employee's attitude, or where the good of the service requires automatic demotion or termination."  Dkt. # 15-5, at 14.

---

[6]     Fincel testified at his deposition that he understood that employees would receive termination hearings based on "the instructions of the chief."  Dkt. # 23-17, at 6.  The chief of police does not have the power to limit the Board's ability to terminate police officers. Compare OKLA. STAT. tit. 11, § 12-106 (powers of the Board) with OKLA. STAT. tit. 11, § 12-111 (duties of chief of police).

• "When corrective measures are not successful, or when such action is deemed necessary by the Board of Trustees, the employee may be terminated." Id. at 15.

At least five separate pages of the Employee Handbook state that "[t]he practices, policies and procedures outlined in this handbook shall not give rise to an expectation of contractual right in the employee." Id. at 3, 7, 10, 12, 15. The Handbook also states "[a]ll employees are 'at will' employees, subject to demotion or removal at any time, 'for the good of the service.' Employment is subject to termination at any time when the needs of the employer may require."[7] Id. at 6. The Employee Handbook repeatedly, clearly, and unequivocally disclaims any alteration to employees' at-will status. Fincel has identified no policy or document that created a legitimate expectation of continued employment.

For these reasons, Fincel had no protected property interest in his continued employment, and his procedural due process claim fails.

B.     Liberty Interest Claim

Defendant argues that Fincel has no evidence that any member of the Board made a defamatory remark that impugned Fincel's good name or reputation, and defendant is entitled to summary judgment on Fincel's liberty interest claim.

The Tenth Circuit has established a four part test to determine whether governmental action has infringed on a person's liberty interest: "first, the statements must impugn the employee's good

_____

[7]     Fincel testified that he did not remember reading the employment at-will provision(s) in the Employee Handbook at the time he was hired. Dkt. # 23-16, at 5. However, Fincel cannot rely on one part of the Handbook while attempting to avoid another part because he did not read or does not remember reading the entire document. Further, it is undisputed that the Employee Handbook was in effect at the time that Fincel was hired. Dkt. ## 23-16, at 5; 15-12, at 1. Whether or not the Employee Handbook was abandoned or changed after Fincel's employment began, and then subsequently re-adopted, is immaterial.

name, reputation, honor, or integrity; second, the statements must be false; third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities; and fourth, the statements must be published." <u>Darr v. Town of Telluride, Colo.</u>, 495 F.3d 1243, 1255 (10th Cir. 2007). If a plaintiff can establish each of these elements, he is entitled a name-clearing hearing to protect his liberty interest in his good name, reputation, honor or integrity. <u>Evers v. Regents of Univ. of Colo.</u>, 509 F.3d 1304, 1308 (10th Cir. 2007).

Fincel claims that Board member Yeoman told the court clerk and/or an Oklahoma Highway Patrol trooper that the Town was "terminating the policemen because they were dishonest cops and they were doing away with corruption," and these statements were repeated to Fincel.[8] Dkt. # 15-11, at 6; 23-17, at 9. Fincel has not identified any other statement giving rise to a liberty interest claim.

Defendant argues that the alleged statements do not reference Fincel by name and are too vague to support a liberty interest claim. Fincel testified that the alleged statement or statements did not specifically mention him by name, Dkt. # 15-3, at 25, but claims that he was a member of a small police department and the statements necessarily implicated him as a dishonest police officer. Defendant also argues that the statements were not made during the course of the termination process and may not be considered when reviewing Fincel's liberty interest claim. The summary judgment record provides no evidence for the Court to determine when the statements were made, and Fincel has failed to show that the statements were made during the course of termination proceedings. His vague assertion that the statements were made "around the time of the

---

[8]     Fincel argues that Yeoman's alleged remark and the repetition of the remark to plaintiff both meet exceptions to the hearsay rule. The Court will assume that both statements are admissible for the purpose of ruling on defendant's motion for summary judgment only.

termination" is not sufficient to create a genuine issue of material fact that plaintiff's good name or reputation were impugned during the termination process.

Further, the statements do not specifically mention Fincel and could not reasonably be viewed as an attempt to harm his reputation or good name. Fincel's claim that the statement is false highlights the difficulty that would be caused if liberty interest claims such as Fincel's were permitted to go to trial. He is not mentioned in the statements and the statements do not refer to any particular actions by a Town police officer suggesting that the statement was about Fincel. He claims that the statements are false because he "swears that he is not a dishonest cop," Dkt. # 23, at 19, but the statement does not reference Fincel or any allegedly improper conduct committed by him. As the statements do not reference any particular conduct, Fincel is generally asserting that his reputation as an "honest" police officer was harmed. This is not what a liberty interest claim is intended to protect. A plaintiff asserting a liberty interest claim must identify a specific false statement during the termination process that harmed his reputation in particular or made it more difficult for him to obtain other employment. In this case, vague allegations that a board member believed all of the Town's police officers were corrupt do not show that Fincel's good name or reputation were at issue during the termination process or that the Town has made it more difficult for Fincel to locate other employment. At most, the statements express an opinion that the Town's police officers were corrupt, but the statements do not suggest that Fincel engaged in any particular misconduct. Therefore, Fincel may not rely on the alleged statements that the Town's police officers were corrupt to support a liberty interest claim. As he has identified no other statements that harmed a liberty interest, defendant is entitled to summary judgment on this claim.

C.    Political Termination Claim

Fincel's petition alleges that he was fired for unspecified "political" reasons, and this violated the United States Constitution.  Dkt. # 2-2.  Fincel's response to defendant's motion for summary judgment provides little clarification concerning the legal or factual basis for this claim. Defendant suggests that Fincel may be alleging that his First Amendment rights were violated. Construing Fincel's petition and his response to defendant's motion for summary judgment broadly, it appears that he is alleging that the Board sought to terminate the "old guard" police officers and replace them with new police officers.

The Tenth Circuit has recognized a claim for political discrimination in situations when a governmental employer allegedly discriminates on the basis of an employee's political affiliation. See Gann v. Cline, 519 F.3d. 1090 (10th Cir. 2008); Snyder v. City of Moab, 354 F.3d 1179 (10th Cir. 2003).  To establish such a claim, the aggrieved employee must show that "(1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind [his] dismissal[ ]; and (2) [the] . . . employment position[ ] did not require political allegiance." Jantzen v. Hawkins, 188 F.3d 1247, 1251 (10th Cir. 1999).  This type of claim does not encompass any type of categorization made by a governmental employer; it is available for terminations on the basis of protected First Amendment activity only.

Fincel fundamentally misunderstands the rights protected by a political discharge claim. Even assuming that the Board terminated plaintiff's employment based on a distinction between "old guard" and "new guard" employees, he has not shown that his affiliation with a political party or engagement in other First Amendment-protected affiliation had anything to do with his termination. Fincel claims that "the new group decided to wipe out the old group" and this shows that his

termination resulted from "more than a 'baleful' personal feud as opposed to one political group versus another political group." Dkt. # 23, at 23.  Fincel has not made a threshold showing that the alleged classification of the "old group" is entitled to any protection under the United States Constitution, and his claim of political discharge fails as a matter of law.

D.    Failure to Pay and Retaliatory Discharge Claims

Fincel's failure to pay and retaliatory discharge claims arise under state law.  See supra. Defendant is entitled to summary judgment on all of Fincel's federal law claims.  If a federal court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining claims.  28 U.S.C. § 1367(c)(3); Gaston v. Ploeger, 297 Fed. App'x 738, 746 (10th Cir. 2008) (unpublished)[9] (stating that 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims).  This Court does not have original jurisdiction over Fincel's failure to pay and retaliatory discharge claims because those claims arise under state law and diversity jurisdiction is not present.  See Dkt. # 2-2, at 1 (alleging that Fincel is a resident of Oklahoma and the Town is a municipality organized under the laws of Oklahoma).  The decision to exercise supplemental jurisdiction is discretionary, but courts should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."  Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)).  Although this case is set for trial in a few weeks and the parties have

---

[9]    Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

submitted preliminary trial materials, the Court finds that the extent of pretrial proceedings does not outweigh the interests that would be served by remanding the state law claims to state court. Judicial economy would be served by having the Oklahoma courts resolve issues of Oklahoma law; further, the parties have an interest in having their Oklahoma law disputes decided in a court intimately familiar with that law.  Further, the Tenth Circuit has "repeatedly recognized that this is the preferred practice." Gaston, 297 Fed. App'x at 746;[10] see Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims"); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995) (noting that there are "the best of reasons" for a district court to defer to a state court rather than retaining and disposing of state law claims).  As they involve Oklahoma law only, and are between an Oklahoma resident and an Oklahoma municipality, the Court declines to exercise supplemental jurisdiction over Fincel's remaining claims.  These claims shall be remanded to the state court.  See 28 U.S.C. § 1441(c) (permitting remand of all matters in which state law predominates).  Therefore, the remainder of Defendant's motion for summary judgment is moot.

        **IT IS THEREFORE ORDERED** that  Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 15) is **granted in part** and **moot in part**.  It is granted as to plaintiff's procedural due process, liberty interest, and political discharge claims; it is moot as to plaintiff's failure to pay and retaliatory discharge claims.  A separate Judgment on Federal Law Claims will be entered herewith.

---

[10]    Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1: 10th Cir. R. 32.1.

16

**IT IS FURTHER ORDERED** that the Court Clerk is hereby directed to **remand** this case to the District Court of Craig County, Oklahoma.

**DATED** this 5th day of April, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT